TKC Aerospace Inc. v. Charles Taylor Muhs Good morning, Your Honors. In my oral argument, I'd like to focus on two issues which we consider especially important. The first is the tension that this case describes between the doctrine of due process and collateral estoppel. Could you pull your mic up a little bit? Yes, certainly. And I have to apologize. I've developed a scratchy throat, a sore throat. I think we all have. So, as I was saying, we want to emphasize in the oral argument this tension between due use of the term malicious as found in 11 U.S.C. 523 A.6. That's the Bankruptcy Code section which exempts from discharge an act that is created, an injury that occurs from a willful and malicious act by the debtor. I'd like to start, although, I'd like to start by emphasizing something that we put in both the opening brief and the reply brief, and I don't think it can be emphasized enough. At no stage in any of the court proceedings, and there have been four or five so far, at no point has Mr. Muhs appeared on his own, been examined by his own counsel, presented evidence on his own behalf, presented other witnesses, or had any... No, Your Honor. Again, that's a little uncertain. Unfortunately, the same counsel... I guess my question really is, what's the job of counsel? Isn't it to represent the client? So it doesn't matter that the client wasn't actually present? Well, let's focus on who the client is. The counsel, which is Dickstein Shapiro, represented PHP in the only trial that occurred in this case, which was in the county court in Arizona, Maricopa County. He was representing PHP. He wasn't representing Mr. Muhs. Now, unfortunately, that same counsel represented Mr. Muhs in the District Court of Alaska. Mr. Muhs says in his affidavit, in the response to the summary judgment motion, that he only testified as a witness, that he was ignored on all discussions of strategy, and he had no opportunity to influence the trial or suggest that the counsel put witnesses on or evidence on his behalf. So what does this go to? Where does this argument go with respect to race judicata? Well, that provides a perfect segue to my next point, Your Honor. I always like to do that. Thank you, Your Honor. There has been quite a bit of litigation as to the meaning of the word malicious under 523A6. It all began, I suppose, with the Supreme Court Geiger versus a name I can't pronounce, Kawa something. This court, in the case of Duncan and Duncan, further defined what was meant by the word malicious. Malicious under the Supreme Court ruling means an act which was done with the specific intent to cause harm. Okay. And in this court, in Duncan versus Duncan, this court distinguished that from willful and wanton, which is a category that exists under state law for punitive damages and so forth, where the defendant only had to be shown to have a substantial certainty that harm would occur, or he willfully, he recklessly disregarded the rights of others. Okay. And Alaska Trade Secrets Law requires willful and malicious appropriation to award exemplary damages, correct? Yes, that is correct. And exemplary damages were awarded here, correct? That is correct. And misappropriation is an injury under the Act, correct? That is correct. So if we substituted injury for misappropriation, the Alaska Trade Secrets Act requires willful and malicious injury. You have to look. This is what I meant when I referenced earlier the ambiguous use of the term malicious. Malicious is defined in that code section, and we lay this out in our reply brief. Malicious in that code section includes acts which would not be synonymous with the requirements of Geiger or this court. They, in fact, allow a finding of malice where someone disregarded the substantial certainty. In other words, you're maintaining that the Alaska statute is broader than the bankruptcy code. Yes. And to get back to you. Even though you've conceded to me that misappropriation is an injury and that there is a willful and malicious misappropriation, therefore willful and malicious injury. That's correct. So that the Alaska court, this is an intentional tort because it's willful and malicious, right? That's correct. Okay. But let's go back to Geiger. And what more does the bankruptcy code require? It requires that they actually intend that the injury occur. But we just went through that it was an intentional tort. You just said, yes, it does. The category is an intentional tort, Your Honor, but so is a willful and wanton injury an intentional tort. It's the way the Alaska code section defines malicious to include categories broader than the requirement of the Supreme Court in Geiger, which is that there be an actual intent to cause injury. Let me get back and answer your question more fully about why this makes a difference. This case involves the solicitation for bid of an airplane and how it could be configured to meet a certain bid requirement. And Mr. Moos was found to have transferred information to PHP that enabled PHP to be successful in that bid. And the injury was found to the plaintiff in this case, TKCA, as a willful and malicious or willful and wanton, I would call it, transfer of information. But Mr. Moos would say in his affidavit, as we point out, he said in his affidavit, that the information he supplied was public knowledge. The bids, these planes have been configured. The exact planes have been configured. But the court rejected that. No. No, it did not. Okay. That's never been litigated. Mr. Moos never has. But it's found by making a finding that it was willful and malicious misappropriation and awarding exemplary damages. You're speaking of the Arizona court or the Alaska court? Alaska court. The Alaska court. That's what the Alaska trade secrets law requires, right? Well, yes, Your Honor. And that's what the court did award exemplary damages. But the Alaska court, it could award exemplary – it sets up two categories, Your Honor. It could award exemplary damages as a willful and malicious transfer of information for someone who didn't understand fully that they were transferring trade secrets. How could that be willful and malicious if he didn't understand? Well, because it's a reasonable man's standard under the Alaska Code section. Here, I'll get to the – Well, maybe can you give me kind of a – can you spread it out for me in a hypothetical? Certainly. How it can be willful and malicious misappropriation and get an award of exemplary damages and not be intentional? Yes, I can. Okay, good. I don't need to be hypothetical. I can tie it to this very case. Great. Mr. Moos didn't believe this was proprietary information. Mr. Moos believed two things. Number one, he believed that PHP had no interest in bidding on this particular solicitation. He knew that for a fact. He knew that the information he was giving PHP was public record. But doesn't the court necessarily have to have rejected that argument in order to have awarded exemplary damages? No. No. Because Mr. Moos could be found to be unreasonable in his belief. It really doesn't require that he believe or not believe. It just needs – under the Alaska statute, which we lay out in our reply brief, simple reckless behavior acting with substantial knowledge could qualify under the Alaska Act. And that's not what happened here. Mr. Moos never has had an opportunity to appear in court and describe his understanding of what he was doing and whether this information was a trade secret or not. So if we were to remand, what instruction would you have us give the bankruptcy court? Exactly. Your Honor, the remedy would be to remand for a trial based on the missing element not proven here, which was malice as defined by the court in Geiger and this court in Duncan. That's the narrow issue the bankruptcy court – Remand for a trial in the bankruptcy court. That is correct, Your Honor. That is correct. And, again, that has never occurred. The bankruptcy court – well, Mr. Moos has a right, frankly, to have the court assess his credibility. And I cite a Tenth Circuit case in here where someone was – a defendant was found liable for willfully and misappropriating a – well, for breaching a non-compete agreement, which would have been a willful and malicious act under the definition urged by the appellee here. And yet the court found that it wasn't actionable under 5.386 because he had a sincere belief that the non-compete clause was invalid. It goes to the belief of the debtor. Bankruptcy court is judgmental in this way, and it's odd, quite honestly. They require that the debtor have intent in many areas, and this is one of them, that the debtor actually have intent to injure. And that's supported by both the Supreme Court ruling in Geiger and the ruling of this court in Duncan v. Duncan. I never got to my point about the tension between due process and collateral estoppel. Yes, Your Honor, they come into collision as they do in this case, and they're both important principles. But when looking at the two, when we can't reconcile the two, what should we do? I argue that the court should give greater weight to due process. Due process is a fundamental right. Any child understands due process. So is your argument that even if we applied, correctly applied collateral estoppel principles here, that due process would trump that? Yes, Your Honor. Because collateral estoppel. That is a tough argument to make. It is, Your Honor, but I'm trying to make it. Is there a court that's done that? Well, Blondertongue, yes, the U.S. Supreme Court in the case of Blondertongue, which we cite in our brief, it says that in some cases you can't apply collateral estoppel and give honor to due process, and due process has to triumph. What I'm saying here is that collateral estoppel is a worthy document. Lawyers and judges, we all understand it. The average person probably wouldn't understand it clearly. But its intent is to promote judicial economy, to avoid inconsistent rulings, and to make it less expensive for litigants where you don't have multiple trials. Weigh that against the fundamental right to due process, which, as I said earlier, any child understands. That's a constitutional right. That's a natural right almost. Anyone understands, I need an opportunity to explain myself and be heard. Mr. Moose hasn't had that opportunity, Your Honors. He hasn't. The missing element in this case is Mr. Moose's intent to injure PHP. And we argue that you can't find that intent because nowhere in the record has he testified. Nowhere in the record has Mr. Moose's credibility been assessed or judged. Well, I'm not sure that that argument, I thought you had a stronger argument that you were making earlier. But if the Alaska Code was exactly identical to the Bankruptcy Code, you would have no argument. It didn't matter whether he went in there or not. That is correct. The race judicata would apply. That is correct. And that's what the appellee argued. I think there was no meaningful distinction between the two. Exactly. But you just said to us, you just sort of diverge off of that, seemingly if he wasn't there, if he wasn't given an opportunity, if he wasn't talking there, it's no good. But that's not what the race judicata law is, is it? No, again, this isn't race judicata. But what I'm saying is that if you look at the definition of malicious under the Alaska law, and we laid it out in the appellee, we've actually dug down into the code section and looked at the definitions, it does not comport with Geiger. It does not narrow the field to injuries done with the intent to cause harm. It allows people who are negligent, careless, or reckless to be liable. Thank you, Your Honor. Thank you very much. Mr. Proxmire? May it please the Court, I'm Douglas Proxmire. I'm here on behalf of TKC Aerospace. The debtor mused claims that willful malicious conduct resulting in the theft of trade secrets under the Uniform Trade Secrets Act does not equate to finding that Muse inflicted a willful malicious injury on TKC as defined in the bankruptcy code. Can you talk a little louder, too, or bring the microphone forward? Okay. Sorry about that. Thank you. There have been several cases that have been confronted with this exact same issue. And every single time that a trial court found that a debtor acted willfully and maliciously when it stole trade secrets, the bankruptcy court then applied collateral estoppel to reach a non-dischargeability determination under 523A6. Under the Virginia Uniform Trade Secrets Act, an employee... And where did the court find that Mr. Muse acted with intent to injure? Okay, I'll go straight to the issues that Mr. Muse claims he wants to have litigated in the bankruptcy court. Every one of those issues were litigated in detail in the trial court. On the malicious point... Where was it litigated? Excuse me? Where was it litigated? It was litigated in Arizona. In Arizona. He wasn't a party in Arizona. He was in privity with a party in Arizona. And in fact... He wasn't a party in Arizona. The reason why TKCA moved to try the case in Alaska first, Mr. Muse... The judgment in Arizona was against what entity? It was in state court in Arizona. I know, but where was the judgment against? What party? What party was the judgment against? Phoenix Heliparts. Which was not Mr. Muse. Okay, the reason why the Arizona case went first... Did the Arizona court hold that Mr. Muse was in privity with PHP or whatever it's called? The Alaska court found that. The Arizona court. I ask you if the Arizona court held that it was in privity or whatever it's called. The issue was not before the Arizona court. No, that's a no. So the answer is no. Correct. The Arizona court didn't so hold. All right. Was the Arizona judgment ever appealed? The Alaska judgment has been appealed. You can't hear me. I'm sorry. Was the Arizona judgment appealed? No, Your Honor. And the Alaska judgment was against who? Muse. It was against Muse. Was it appealed? Yes. To where? The 9th Circuit. Did the Alaska court hold a hearing? They held oral argument. Your Honor... So let me just follow up a minute on that. Under Alaska law, is an unappealed decision race judicata? That's what we're looking at, right? Alaska law. I believe it is. I mean, because the court held that, right? Correct. So that has to be your position. I guess they haven't said that that is not correct. Right? Correct. Okay. You're saying it's race judicata? It's collateral estoppel and race judicata. Sorry. I didn't mean to differentiate between two of those. There's a difference between race judicata and collateral estoppel. I understand. I am corrected. If I could, let me just lay out how we got to where we are. TKCA, finding that Mr. Muse stole TKCA's trade secrets and handed them off to PHP, sued PHP in Arizona, Mr. Muse in Alaska. TKCA wanted to proceed against Mr. Muse first in Alaska. Mr. Muse asked to stay the Alaska case. When he asked to stay the Alaska case, the court raised, you're not a party in Arizona. Mr. Muse stated to the Alaska court, even though he's not a party, is distinction without a difference because TKCA's claims of wrongdoing by PHP are entirely based on the alleged wrongdoing of Muse. This is what Mr. Muse said in court. Mr. Muse said this? Yes, in Alaska. Mr. Muse or some lawyer said it? Mr. Muse's lawyer said it, yes. Did that lawyer represent PHP? Correct.  He was representing how many parties at that point? Two, Mr. Muse and PHP. In the Alaska court? Correct. They were both parties in Alaska? No. Okay, I think we are having trouble following this, or at least I should speak only for myself. I understand. What you're telling us is that your client wished to bring the action originally in Alaska. Correct. And Mr. Muse and the, what is his group called? PHP, come on, you've got to help me a little here. Phoenix Telecom. You know the case, right? Phoenix Telecom is PHP, yes. Okay. They said, no, no, no, we want it in Arizona. That's in the very beginning of the case? Correct. Okay. And they said it through some lawyer, some joint lawyer of theirs, right? Mr. Muse's lawyer. There's no testimony taken about that? No. Okay. So it goes to Arizona. There is a trial. Correct. There is no appeal from the trial. Is that right? It was initially appealed, but the appeal was dropped. The appeal was dropped. The decision is final. Your client takes it to Alaska. Correct. And claims that it has collateral estoppel effect. Correct. And at that time, does Mr. Muse say, no, no, no, no, I'm not bound by this because I wasn't a party? Yes, he did. And is it the same lawyer? No, he had a different counsel at that point. Okay. So he's got his own lawyer, he said, I'm not bound by this. He had his own lawyer before. He changed his counsel, and his counsel made that same collateral estoppel argument that there wasn't privity, and the court found that there was. I thought he had a joint lawyer before, a lawyer with whatever that company. Correct. Did he ever have a separate lawyer from that company? Correct. He did have a joint. He had the same lawyer as PHP initially when he filed the answer and when he filed the motion to stay. Uh-huh. Then the Arizona trial went forward. And does he still have the same lawyer? He still had the same lawyer. Okay. Then the Arizona trial, towards the end of the Arizona trial, there was a culprit hearing because there was destruction of evidence in the Arizona case. Uh-huh. At that point, Muse got his own counsel. And did he then make the claim, no, I don't want to be here, I never wanted to be here? He made that claim to the Alaska court. No, no, no, but you told me that he got a new counsel in Arizona. Correct. And does that new counsel say, no, no, no, I never wanted to be here? No. Lawyer has missed. No, that wasn't part of the. But with his new counsel, he doesn't say that? No. Okay. I thought he wasn't a party in Arizona. He was the key witness. He was not a party to the Arizona case. Correct. He was the key witness. But there is something where he gets a new lawyer and he's arguing. What is he arguing to the Arizona court? He was arguing that there was no theft of trade secrets, that. He wasn't arguing anything. He was not a party to the Arizona case. That was his testimony. But I thought you said he had a lawyer after that said something, a new lawyer. Correct. What did the new lawyer say? That was on the destruction of evidence issue. He claimed that Mr. Muse did not destroy evidence. The court found that he did. And in the course of that argument, does he say, and Mr. Muse shouldn't be here. He's not a party to this. This court doesn't have jurisdiction over him. He hasn't had a right to put his case up. No. Okay. Does that same lawyer go with him to Alaska? Yes. And so then in Alaska, he makes that argument. Correct. Okay. Who owns PHP or whatever it's called? Who owns PHP? Yeah. At the time, it was Tina and Darren Cannon. They were a couple that had an aviation background that worked on helicopters. A husband and wife? Correct. They were the principals of PHP. Correct. And Muse didn't own it? No. He just worked for them. And he didn't run it? No, he worked for them. Correct. He worked for them. Yeah. Okay. All right. Going back to what I was saying about the issues being litigated in Arizona that Mr. Muse now claims should be litigated in the bankruptcy court, Mr. Muse claims that what he stole wasn't trade secrets. There are 50 pages of findings in the Arizona case that describe in detail how Mr. Muse stole TKCA's proposal, the statements of work that describe how TKCA would perform each of the Department of State tasks, TKCA's confidential pricing, and the argument that Mr. Muse didn't know that these were confidential documents. The court found in these documents state alleged confidential, not to be disclosed to third parties. That's on page 56 of the Arizona decision, 106 of the joint appendix. The evaluation notices, page 58, confidential, not to be disclosed to third parties. The Arizona court even cites to Muse's testimony that he knew he was violating his confidentiality agreement. I want to ask about the bankruptcy court because when I asked Mr. Hall what we would tell the defendant, he said we have a new trial because a key element, which is malice or intent to injure, was not proven in the bankruptcy court. What's your response to that? The Arizona court made a detailed finding that there was malice. The Arizona court went beyond the definition. And the bankruptcy court relied on that? The bankruptcy court and the Eastern District relied on that, yes. And if I may just quote from one- Where is that in the record for the bankruptcy court? Well, it's in the finding that he committed a willful and malicious injury. It's the finding that Judge Motz read earlier? Is that what you're saying? It's defined in the opinion finds that Mr. Muse committed a willful and malicious injury upon- You're talking about the bankruptcy court? The bankruptcy court, yes. That's on November 3rd, 2017? Correct. And that's the one that they didn't get a response to? They made a motion on November 2nd and ruled on November 3rd? Is that the one? Correct, yes. Was it argued or anything? The motion for judgment on the pleading? No, it was argued that the Eastern District was sent back to the bankruptcy court and based upon the Eastern District's opinion, the bankruptcy court issued the decision without a hearing. Because it pretty much was laid out by the district court? Correct. And if- So where is the language that you're relying on? On page 41 of the trial court's decision, that's page 91 of the appendix, this court finds by clear and convincing evidence that PHP in the decision also finds- That's the Arizona court? Correct. Okay, but that's interesting. I like seeing that, but- What are you relying on in the Maryland court? I mean, in the Virginia court, the bankruptcy court? Just that the bankruptcy court found that under 523A6, MUSE inflicted a willful malicious injury upon TKCA. Okay, but maybe I've misunderstood the argument. I'm sure your opponent on the other side will come up and tell me if that's the case. But I thought that their essential, their best argument, if you will, was that the Alaska Trade Secrets Act was broader than the bankruptcy code. So when the Alaska Trade Secrets Act requires willful and malicious misappropriation to award exemplary damages, that does not necessarily mean that there is, that you're within 523CA6. Can you talk to me about that? Yes. Okay. There have been six decisions that I could find where a bankruptcy court was faced with a willful and malicious finding under the Trade Secrets Act. These are all district court or bankruptcy court cases, right? Correct. And without a trial, these courts applied collateral estoppel for circumstances that are far less egregious than the conduct that Mr. MUSE committed. And in one of the cases, I believe it's N. Ray Brown, it was a default judgment. There wasn't even, the witness never testified, the debtor never testified at all. And they still found willful and malicious. I personally am not worried about the testimony or not. What I'm trying to do is to line up the language between the Alaska Trade Secrets Act and the bankruptcy code. Okay. All right. The Alaska Trade Secrets Act is part of the Uniform Trade Secrets Act. Correct. And the Uniform Trade Secrets Act has been adopted by 47 of the 50 states. Correct. And it's been litigated under the Virginia Trade Secrets Act, Illinois, Rhode Island, Ohio, Missouri, and now North Carolina. Which were all the Uniform Trade Secrets Act. And every single one has the same language. And every single time when there is a willful and malicious conduct committed that triggers exemplary damages, then in every single case, the bankruptcy court has found that that results in a finding of willful and malicious injury upon the creditor. The exemplary damages is the thing that triggers it. Correct. And in those cases, every single one of them, the conduct identified by the debtor is not nearly as egregious as what Mr. Mews did in this case. Mr. Mews … Can you give me an example of one? You said one was a default judgment. Do you know any of the facts? Yes. Maybe you don't. The trial courts here determined that Mews' actions rose to a far more evil and malicious level. And as Mews uploaded thousands of TKCA files to PHP to allow PHP to compete, Mews actively took steps to block TKCA from competing by stealing the letter of intent from Bombardier that was headed to TKCA. Okay. This is language from the Arizona court, right? Correct. Okay. I'm interested in that, but that's not the question I was asking you. I remember those five cases that you were referring to me, and you said they had much less … Correct. Okay. You're answering that question. Okay. I didn't know. If you were answering, I just didn't understand that. Yes. I can quickly go through them. N. Ray Harton, an employee … Just give me one. Okay. And she was unbeknownst to the company. She was leaving the company. So she came at night and downloaded their customer list. She then left the company and sent out emails to everyone on the customer list that her new spa is opening. That was found to be a willful and malicious misappropriation, triggering non-dischargeability. Because exemplary damages had been awarded? Correct. Correct. And that's just one example. And there's similar in the N. Ray Coke case, employee misappropriated electronic files. That was found to be a willful and malicious injury. I mean, I can go on. No, no, no. You don't have to go on. Go on with whatever you want to say. Okay. The last issue on malice, and I think this can't be ignored, is malice can also be proved through destruction of evidence. And the fabrication of evidence. And there are detailed findings that Mewes failed to disclose the use of a laptop that had key information that was never — Who made these findings? The Arizona court made these findings. Arizona court. When he had his new lawyer that represented just him. Correct. The Arizona court also found that he destroyed evidence, Mr. Mewes destroyed evidence, by deleting his computer's user partition. I'm not a computer expert, but essentially that destroys any information that could be found on the computer that would have helped TKCA prove their case and help prove his conduct. And most importantly, Mewes concocted, fabricated, and backdated what was called the Gallup proposal to hide his theft of TKCA trade secrets and confidential information. That's on page 41 and 42 and page 54 of the Arizona decision. 91 and 92 of the joint appendix. And it's very important because what Mewes did is he kept TKCA from more easily proving its case. By destroying evidence, by concocting this proposal, TKCA had to spend additional dollars in attorney's fees and expert fees to prove his transgressions. Now Mr. Mewes is asking TKCA to prove it again. TKCA spent four years in trial in Arizona proving this case. The reason why we were in Arizona was because Mr. Mewes implored the Alaska court to try this case in Arizona. He promised he would be bound by this case. His attorney used the word collateral estoppel. So there was no doubt that Mr. Mewes knew what was going on. And to the extent that Mr. Mewes claims that I didn't know what my counsel was doing, his action is not to have another trial in bankruptcy court. His action is against Dixitne Shapiro. And he filed a malpractice suit against Dixitne Shapiro, and he didn't raise that ground. Because Dixitne Shapiro represented PHP. Correct. Not him. Both. In Arizona? They had identity of interest, they had a joint defense agreement, and they represented both Mewes and PHP. In Arizona? In Arizona. But he wasn't a party to that lawsuit. In Arizona, Dixitne Shapiro was Mewes' counsel as a witness. But not as a party? He was not a party. He could not be sued in Arizona. TKCA would have preferred to sue them both at the same time to avoid dual litigation. But because they were in different places, we couldn't get jurisdiction over both parties in the same court. So we had to try them in different courts. We had no other choice. I have nothing further. Thank you very much. John, I'd like to try and clear up some confusion on several points that was evident in counsel's discussion. Mr. Mewes was represented by the same firm, Dixitne Shapiro. I don't think there's any lack of clarity about that. I think there was because I heard, I at least got the impression that something incorrect was presented, or the impression was correct. Dixitne Shapiro represented Mr. Mewes, the firm, and PHP. The Alaska court, Alaska suit was filed first. The Dixitne Shapiro attorney in Alaska asked that court to hold off and wait for the decision in Arizona. And frankly, he said that the parties would be bound by it. Now, Mr. Mewes got rid of that attorney at a point in the case and hired another attorney. And that attorney, as you'll see in the record, it's in the appendix, argued strenuously that collateral estoppel shouldn't apply in the Alaska court. And in fact, that court did not apply collateral estoppel. It applied something else called quasi-estoppel. Now, at some point, I thought I understood from opposing counsel's argument that at some point in Arizona, Mr. Mewes also had a separate attorney, even though he wasn't a party. Yeah, he may have. But that attorney is representing him as a witness, and he testified only very briefly. So that attorney didn't participate in the – I assume there was some sort of hearing or argument about whether Mr. Mewes had destroyed evidence. That's what that attorney was for. So he did. No getting around the fact that Dixitne Shapiro's conduct of the Arizona case made things much, much worse. It's frankly difficult to understand. Well, but he's – the representation here is he sued Dixitne Shapiro, right? Well, he did, in fact. And I could – that's the next thing I wanted to bring up to the court. The trustee in bankruptcy inherits the rights of Mr. Mewes in Chapter 7. Mr. Mewes filed a 7. The trustee in bankruptcy filed a malpractice action through special counsel against Dixitne Shapiro. And I believe they've just settled it for $3 million, if I'm wrong. It's that much, perhaps more. But I was speaking to the trustee, and he was going to seek approval from the bankruptcy court for that amount. Your Honors mentioned res judicata. Res judicata is not applicable to a dischargeability action under the Bankruptcy Code. I corrected myself. You didn't hear that part? But just to – Okay. I'm sorry. Mea culpa. That's fine. Okay. I was going to raise – What we really need to know is opposing counsel said that the bankruptcy court did find intent to injure and that malice was proven there based on something that the Arizona court said. What's your response to that? That is exactly correct, Your Honor. Everything leads back to the Arizona court. No other court conducted a hearing in this case. No other court. The Alaska decision. Well, why can't the bankruptcy court, in your view, rely on what the Arizona court did? Because, again, Mr. Moos was not a party to the Arizona action, and the Arizona action did not look into Mr. Moos' malice. The Arizona court defined malice or malicious intent as required under the statute as, and this is Joint Appendix 86-87, such intentional acts or gross neglect of duty as to evidence reckless indifference to the rights of others. That's exactly what this court prohibited in Duncan v. Duncan. Okay. That sets up two categories. Category 1, where someone is reckless or indifferent to the rights of the other, and Category 2, where they are intended to cause harm. Only intention to cause harm is actionable under 523-86, Your Honor. I can't resist saying the case against applying res judicata is N. Ray Piggy, a decision of this court from the 1980s. A name like that can't be hard to find. Thank you very much. Your Honor, I would just like to emphasize again that everything, as Your Honor pointed out, goes back to the Arizona court. Not the Alaska court or the bankruptcy court or any other court at a hearing, and they cannot. Well, it's actually opposing counsel that says that everything goes back to the Arizona court, right? Yes, that's right. But you can't go beyond that, and that's what happened in Alaska. The Alaska court took the Arizona ruling and went beyond it, and the bankruptcy court took the Alaska decision and went beyond that by saying, look, here's a case where. Was the Alaska judgment appealed to the non-circuit? It was appealed. The appeal was stayed under the bankruptcy code. There was an appeal filed, the notice of appeal. Yes, that's correct. It's in limbo. Judge O'Grady said something about it hadn't been appealed, I thought, in one of his opinions. Well, I could always be wrong, but my understanding, my clear understanding of the case. Maybe he was referring to the fact that the appeal wasn't consummated because the bankruptcy stay kicked in. That's correct. It was appealed, and because of the bankruptcy stay, it rather dropped into limbo. So the appeal hadn't been resolved. That's my understanding. Perhaps Mr. Proxmore. And there was no appeal in Arizona. That is correct. There was no appeal in Arizona. An appeal was sought or filed in the non-circuit. It's never been resolved. Yes. Okay. But, again, Mr. Moos was not a party to Arizona. He couldn't appeal that. This is the first appellate court to look at that. That is correct, Your Honor, other than the district court in Alexandria. Well, it was an acting as an appeals court. Absolutely. You're right. I guess I'll finish. Twice. He had it twice. I guess I'll finish early and just emphasize that the missing element here is malice as defined by Geiger in this court. The actual intent to cause injury to PHP. And in Mr. Moos' affidavit, these are not hollow words. In Mr. Moos' affidavit to the summary judgment motion filed in bankruptcy court, he indicated that if he had the opportunity, he would testify that he didn't believe harm would occur because the appellee, TKCA, had no intent to bid on this claim, and all of the information he provided PHP was in the public record. It was part of the prior bids that anyone could look at, just get it from the government under the Freedom of Information Act. Thank you, Your Honor. Thank you very much. We will come down and greet the lawyers and then go directly to our next case.
judges: Diana Gribbon Motz, Robert B. King, Stephanie D. Thacker